**Enrique ESPINOSA, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 14–04–01096–CR, 14–04–01097–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

May 30, 2006.

---

Thomas W. McQuage, Galveston, for Henry Espinosa.

M. Elizabeth Foley, Galveston, for the State of Texas.

Panel consists of Chief Justice HEDGES and Justices YATES and ANDERSON.

JOHN S. ANDERSON, Justice.

Appellant, Enrique Espinosa, pleaded guilty to two counts of attempted capital murder. *See* TEX. PEN.CODE ANN. § 15.01 (Vernon 2003); TEX. PEN.CODE ANN. § 19.03(a)(1) (Vernon Supp.2005). After a punishment hearing, a jury assessed punishment at fifty-five years' confinement in the Texas Department of Criminal Justice, Institutional Division, and a $5,000 fine for each offense to run concurrently. Appellant asserts three issues on appeal. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Around noon on February 12, 2003, appellant walked along the Galveston seawall with another man. Two Galveston police officers, Officer Clemente Garcia and Officer Jerry Roberts, drove past the men and recognized appellant as having an outstanding warrant. The officers made a u-turn on Seawall Blvd., so appellant and the other man were walking towards the officers. Officer Garcia exited the driver's side of the police vehicle and walked to the back of the car. Officer Roberts exited the passenger side of the vehicle, approached appellant and the other man, and began talking to them. Within less than one minute, appellant took a few steps away from Officer Roberts, pulled out a gun, and shot him two times, once in the leg and once in the stomach. Officer Garcia yelled at appellant from behind the police vehicle and fired two shots at appellant. Appellant then fired one shot at Officer Garcia. Appellant and the other man ran from the scene on foot, and Officer Garcia followed them. Both appellant and Officer Garcia fired more shots at each other during this pursuit. Officer Garcia

eventually lost appellant and the other man.

Later than evening, Roberto Torres, appellant's older cousin, and appellant's mother convinced appellant to turn himself in to the police. Torres called Officer Joey Quiroga and arranged to meet Officer Quiroga in a public location for appellant to be arrested. Officer Quiroga met Torres, appellant, and appellant's mother, at a grocery store parking lot, where Officer Quiroga arrested appellant. Appellant then directed Officer Quiroga to the gun he used earlier in the day.

Appellant subsequently pleaded guilty to two counts of attempted capital murder of a police officer without an agreement as to punishment. Appellant elected to have a jury assess punishment. After hearing evidence from both the State and defense, the jury assessed punishment at 55 years' confinement and a $5,000 fine for each offense.

### DISCUSSION

Appellant asserts three issues on appeal: (1) the trial court erred in permitting the prosecutor to improperly argue to the jury; (2) the trial court erred in permitting the introduction of appellant's out of court statement; and (3) the trial court erred in admitting impermissible victim impact testimony.

### I. *Improper Jury Argument*

In his first issue, appellant contends that through a series of questions to witnesses, the State improperly made an argument to the jury.[1] Specifically, appellant contends the prosecutor attempted to make an improper comparison of the punishment differences between attempted capital mur-

---

1. We note the concurrence would have us analyze this issue as an improper evidentiary ruling. We decline to do so because such

analysis would distort the plain language of appellant's true issue before this court.

der and capital murder when questioning two witnesses. During Officer Clemente Garcia's testimony, the prosecutor asked whether someone, prior to killing another, would be called a killer. During Roberto Torres's testimony, the prosecutor elicited questions about what appellant's punishment would have been if the officers at whom appellant shot had died and whether "we're asking the jury to give [appellant] credit for the fact that [the officers] didn't die." Appellant contends these questions were not designed to elicit personal knowledge from the witnesses, but rather were to frame an argument to the jury by persistently questioning witnesses about subjects that exceed the bounds of permissible jury argument.

Proper jury argument consists of four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answers to argument of opposing counsel; or (4) pleas for law enforcement. *Guidry v. State*, 9 S.W.3d 133, 154 (Tex.Crim.App.1999); *Wright v. State*, 178 S.W.3d 905, 929 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd). Error is not reversible unless, in light of the record as a whole, the argument is extreme and manifestly improper. *Allridge v. State*, 762 S.W.2d 146, 155 (Tex.Crim.App.1988); *Wright*, 178 S.W.3d at 929.

The State contends appellant waived review of any error regarding the State's comments because appellant failed to object to similar comments made during voir dire. Appellant's failure to timely object to an alleged error waives the complaint on appeal. TEX.R.APP. P. 33.1(a). When the parties present the same evidence or argument to the jury elsewhere during trial without objection, no reversible error exists. *McFarland v. State*, 845 S.W.2d 824, 840 (Tex.Crim.App.1992) (overruled on other grounds); *Longoria v. State*, 154 S.W.3d 747, 766 (Tex.App.-Houston [14th Dist.] 2004, pet. ref'd). Appellant must object at the earliest possible opportunity to prevent waiver of an issue on appeal. *Turner v. State*, 805 S.W.2d 423, 431 (Tex.Crim.App.1991); *Ross v. State*, 154 S.W.3d 804, 807–08 (Tex.App.-Houston [14th Dist.] 2004, pet. ref'd). The prosecutor first made the complained of remarks during voir dire when the prosecutor discussed the differences in punishment between attempted capital murder and capital murder. The prosecutor explained that if a person commits capital murder, the punishment is either life in prison or the death penalty, but if you only attempt to commit capital murder, the penalty range is reduced by one degree. The prosecutor also described a hypothetical where a defendant intended to strangle a six-year-old girl to death and left her by the road, but she lived because emergency workers saved her. Therefore, the defendant in the hypothetical could only be charged with attempted capital murder. Had the child died, the crime charged would have been capital murder. Appellant did not object to the punishment explanation or the hypothetical.

When appellant complains about an improper remark by the prosecutor during voir dire, appellant must object when the remark is made. *Beltran v. State*, 99 S.W.3d 807, 811 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd) (overruling issue about trial court's improper comments because appellant failed to preserve error by objecting when the court made the comments); *see also Cruz v. State*, 877 S.W.2d 863, 868 (Tex.App.-Beaumont 1994, pet. ref'd) (holding the defendant waived the issue on appeal of improper argument during closing argument because he did not object during voir dire when the prosecutor first made comments about the difference in punishment between the charged crime of murder and capital murder). Ac-

cordingly, we hold appellant failed to preserve the issue of whether these questions amounted to improper jury argument for appellate review because he did not object when the prosecutor first made the complained of argument to the jury during voir dire.

■ Furthermore, even if appellant had properly preserved this issue for review, no harm occurred. The jury could only assess the range of punishment provided by law and incorporated in the jury charge, which in this case ranged from five to ninety-nine years' confinement. Viewing the entire record, assuming these questions amount to jury argument, they are not extreme or manifestly improper. *See Allridge,* 762 S.W.2d at 155; *Cruz,* 877 S.W.2d at 868.

## II. *Extraneous Offense Punishment Evidence*

■ In his second issue, appellant contends the trial court erred when it permitted the State to introduce appellant's out of court statement to a jailor as evidence of an extraneous offense. Appellant contends the prejudicial effect exceeds the probative value of this statement. When assessing punishment, article 37.07, section 3(a) of the Texas Code of Criminal Procedure permits the jury to consider evidence of extraneous crimes or bad acts that are shown beyond a reasonable doubt to have been committed by the defendant. TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(a) (Vernon Supp.2005). The trial judge has wide latitude in determining what evidence is relevant, including acts occurring before or after the charged offense. *Contreras v. State,* 59 S.W.3d 362, 365 (Tex.App.-Houston [1st Dist.] 2001, no pet.). "Determining what is relevant then should be a question of what is helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case."

*Rogers v. State,* 991 S.W.2d 263, 265 (Tex. Crim.App.1999). Even if relevant to the determination of a defendant's sentence, however, evidence may be excluded on grounds that its probative value is substantially outweighed by the danger of unfair prejudice. *See id.* at 266.

An appellate court will reverse a trial court's decision to admit evidence only for an abuse of discretion. *Ho v. State,* 171 S.W.3d 295, 302 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd). The abuse of discretion standard requires an appellate court to uphold a trial court's admissibility decision when that decision is within the zone of reasonable disagreement. *Robbins v. State,* 88 S.W.3d 256, 260 (Tex.Crim. App.2002).

■ Appellant contends his remark lacked a common relationship to himself or to the circumstances of the offense, citing *Goudeau v. State,* 788 S.W.2d 431 (Tex. App.-Houston [1st Dist.] 1990, no pet.). We disagree. Appellant made threatening statements to a sheriff's deputy while in jail awaiting trial for the offense of shooting two police officers. The sheriff's deputy testified appellant said that when appellant "signs" for his time after his case is through, the deputies "better watch out" because appellant is going to get a deputy, also. Considering the nature of the offense, these statements are highly relevant in assessing punishment.

■ Appellant also contends his remarks are unfairly prejudicial because the deputy never charged appellant with disciplinary action or afforded him a hearing to defend himself. However, appellant has been afforded the protection of the Texas Code of Criminal Procedure. Article 37.07, section 3(a)(1) requires the jury, when assessing punishment, to only consider extraneous offenses and bad acts when those offenses and acts have been proven beyond

a reasonable doubt. Tex.Code Crim. Proc. Ann. art. 37.07(a)(1); *Huizar v. State,* 12 S.W.3d 479, 481 (Tex.Crim.App.2000). The jury must be instructed about this rule, and in this case, the jury was given such an instruction. *See Huizar,* 12 S.W.3d at 484. Defense counsel also cross-examined witnesses and argued to the jury that appellant's statement cannot be considered unless the State proved it beyond a reasonable doubt.

Appellant further contends the context in which the statement was made makes the statement unfairly prejudicial. Essentially, the remark was not taken seriously by those familiar with a jail environment, but persons *not* familiar with a jail environment may have been deeply disturbed upon hearing the remark. We disagree. Rule 403 of the Texas Rules of Evidence carries a presumption that relevant evidence must be more probative than prejudicial. *Jones v. State,* 944 S.W.2d 642, 652 (Tex.Crim.App.1996); *Ho,* 171 S.W.3d at 301. Evidence should be excluded only when there exists a clear disparity between the danger of unfair prejudice and the probative value of the evidence. *Jones,* 944 S.W.2d at 652. To be unfairly prejudicial, there must be "an undue tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one." *Rogers,* 991 S.W.2d at 266. The jury's lack of familiarity with the interactions between people in jail and those guarding them does not create an undue tendency to suggest the jury will be inflamed by those statements and make a punishment decision on their emotions, rather than the facts before them. One of the goals of the Penal Code is to prevent a defendant from continuing to engage in criminal behavior after that defendant has completed the sentence. Tex. Pen.Code Ann. § 1.02(1)(C) (Vernon 2003); *Rogers,* 991 S.W.2d at 265–

66. Appellant's statements run directly opposite of this purpose. Appellant has not shown a clear disparity between the danger of unfair prejudice and the probative value of appellant's threat to harm another police officer once released from prison. We hold the trial court did not abuse its discretion in admitting into evidence appellant's statement, and we overrule appellant's second issue.

### III. Victim Impact Testimony

In his third issue, appellant contends the trial court erred when it permitted the State to elicit impermissible victim impact testimony. The trial court exercises discretion in admitting victim impact evidence, while appropriately limiting the amount and scope of such evidence. *Salazar v. State,* 90 S.W.3d 330, 336 (Tex. Crim.App.2002). An appellate court reviews the admission of victim impact testimony under an abuse of discretion standard. *DeLarue v. State,* 102 S.W.3d 388, 403 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd). If the trial court's ruling is within the zone of reasonable disagreement, a trial court's ruling will be upheld. *Id.* When considering the admissibility of victim impact testimony, trial courts must consider such factors as: (1) how probative is the evidence; (2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent's need for the evidence. *Salazar,* 90 S.W.3d at 336 (citing *Solomon v. State,* 49 S.W.3d 356, 366 (Tex.Crim.App.2001) and *Reese v. State,* 33 S.W.3d 238, 240 (Tex.Crim.App. 2000)). A trial court deserves the greatest deference when it has explicitly weighed and balanced the factors and articulated its rationale for admitting or excluding evidence. *Id.* at 337. The decision to admit victim impact testimony does not follow a bright line rule; therefore, the

decision requires heightened judicial supervision and careful selection of such evidence to maximize its probative value and minimize the risk of unfair prejudice. *Id.* at 336.

▇▇▇ Victim impact evidence may be admissible at the punishment phase when that evidence has some bearing on the defendant's personal responsibility or moral culpability. *Id.* at 335. Victim impact evidence is designed to remind the jury of the foreseeable consequences the crime has on the community and the victim's family and friends. *Id.* Relevant victim impact evidence may include the physical, psychological, or economic effects of a crime on the victim or the victim's family. *See Stavinoha v. State,* 808 S.W.2d 76, 79 (Tex.Crim.App.1991); *Miller–El v. State,* 782 S.W.2d 892, 895 (Tex.Crim.App.1990).

## A. Terry Bowden's Testimony

▇▇▇ Appellant contends witness Terry Bowden's testimony about her reaction to the shooting on February 12, 2003 constitutes improper extraneous victim impact evidence. Extraneous victim impact evidence by people not named in the indictment is inadmissible because such evidence runs the risk of extreme prejudice and can lead to an unfair punishment hearing. *Cantu v. State,* 939 S.W.2d 627, 637 (Tex.Crim.App.1997); *Lindsay v. State,* 102 S.W.3d 223, 228 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd). Such evidence is irrelevant under Rule 401 of the Texas Rules of Evidence. *Cantu,* 939 S.W.2d at 637; *see* TEX.R. EVID. 401. Therefore, trial courts limit victim impact testimony to those victims named in an indictment. *Lindsay,* 102 S.W.3d at 228.

▇▇▇ Terry Bowden was eating lunch in a van with some co-workers approximately three car lengths away from the shooting. She testified about seeing appellant shoot

Officer Roberts, but she did not see what Officer Garcia did because she moved down to the floorboard of the van after the shooting began. When the prosecutor asked her why she moved, she testified she moved to the floorboard because she was scared. Defense counsel objected to improper victim impact testimony, and the trial court overruled the objection but told the prosecutor he could not ask how the event made her feel or whether it caused her trauma in the future. The prosecutor then asked Bowden again why she moved to the floorboard, and she testified she did it because she was scared.

Bowden's testimony included her personal observances of the events surrounding the shooting. She testified she was scared at the time, but that statement did not amount to victim impact testimony. Bowden's statement was about the circumstances surrounding the shooting and why she only observed part of the events. Circumstances of the offense itself will be admissible for the fact-finder's consideration when assessing punishment. TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(a); *Miller–El,* 782 S.W.2d at 896; *Sanders v. State,* 25 S.W.3d 854, 857 (Tex.App.-Houston [14th Dist.] 2000), *pet. dism'd, improvidently granted,* 56 S.W.3d 52 (Tex.Crim. App.2001). We disagree with appellant's contention that this testimony amounts to victim impact testimony by Bowden. Bowden did not testify about the foreseeable consequences of appellant's crime. *See Salazar,* 90 S.W.3d at 335. Rather, she testified about the circumstances of the offense.

## B. Officer Jerry Roberts' Testimony

▇▇▇ Appellant further contends Officer Roberts testimony about his wife's fear for her husband's life while working as a police officer constitutes improper victim impact evidence.[2] This testimony clearly

---

2. Appellant cites *Fryer v. State,* 68 S.W.3d 628, 630 (Tex.Crim.App.2002), for the propo-

falls within the realm of proper victim impact testimony because Officer Roberts testified about the impact his injuries had on his family. *See Salazar*, 90 S.W.3d at 335 (holding the jury should hear testimony about the impact of a crime on the victim's family members and friends); *Richardson v. State*, 83 S.W.3d 332, 360–61 (Tex.App.-Corpus Christi 2002, pet. ref'd) (holding a doctor may testify about the impact of the crime on the children of their murdered mother). The trial court did not abuse its discretion in admitting this testimony from Officer Roberts.

Accordingly, we overrule appellant's third issue.

### CONCLUSION

Having considered and overruled each of appellant's three issues on appeal, we affirm the judgment of the trial court.

YATES, J., concurring.

LESLIE BROCK YATES, Justice, concurring.

I write separately to note my disagreement with the majority's conclusion that appellant somehow waived his first issue by failing to object during voir dire. However, I agree with the majority's conclusion that appellant was not harmed by the prosecutor's questions regarding the comparison in punishment ranges between capital murder and attempted capital murder, and I join the majority's opinion as to appellant's second and third issues.

The majority analyzes appellant's first issue as one regarding improper jury argument and concludes appellant waived this issue by failing to object to similar statements made during voir dire, citing *Cruz v. State*, 877 S.W.2d 863, 868 (Tex.App.-Beaumont 1994, pet. ref'd). I disagree with this analysis for two reasons. First, this issue challenges an evidentiary ruling and should be analyzed accordingly. Though appellant objected to these questions as being argumentative, that does not transform the issue into one of improper jury argument.[1] Thus, even if the failure to object during voir dire could in fact waive an objection to improper jury argument, there is no authority holding that it would also waive an evidentiary objection. Second, neither party has argued whether the voir dire statements were in fact improper, nor has the majority addressed this issue. The standards governing voir dire differ from those for evidentiary rulings or closing arguments, and what is proper in voir dire may be improper in other contexts. Thus, the majority errs in penalizing appellant for failing to object during voir dire when appellant is not raising an issue about improper voir dire and without first establishing that there was any reason to object.

For these reasons, I respectfully concur.

---

sition that a victim cannot testify about the impact of a crime on his or her family, but rather, the family member must testify themselves. Appellant mischaracterizes the holding in *Fryer*. The Eighth Amendment analysis in *Fryer* discusses the United States Supreme Court's holding in *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), overturned in part by *Payne v. Tennessee*, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), which requires family members with opinions and characterizations about a crime itself to testify about those opinions themselves. *Fryer*, 68 S.W.3d at 630. *Fryer* does not hold family members must personally testify about how the crime impacted their lives. *Fryer* does not apply to the facts or issues of this case.

1. In fact, the prosecutor never even mentioned the comparison of punishments in closing argument.